UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
    MICHELLE HENRY,

                             Plaintiff,

            - against -

    CAPITAL ONE, N.A.,

                            Defendant.

---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-2281 (BMC)

**COGAN**, District Judge.

      Plaintiff Michelle Henry sued defendant Capital One, N.A. in New York State Supreme Court for breach of contract, negligence, gross negligence, and deceptive business practices arising out of allegations that approximately $85,000 in cash went missing from her safe deposit box located on defendant's premises. Capital One timely removed the case to federal court and has moved to dismiss. For the following reasons, defendant's motion is granted.

## BACKGROUND

      Plaintiff executed the Safe Deposit Lease Agreement (the "lease agreement") for safe deposit box number 1973-6 at a Capital One branch located in Queens. The lease agreement provided that the relationship between defendant and plaintiff was "that of landlord and tenant and under no circumstances will it be considered a bailee." Further, it disclaimed liability for losses of cash, providing that: "The Bank shall not be liable for the loss of money . . . . The Bank will in no event be liable for alleged loss or destruction of any cash claimed to have been placed in the Safe Deposit Box."

      Plaintiff alleges that she placed approximately $85,000 in cash in her safe deposit box. She does not indicate that she placed any other possessions in the box. Throughout the course of

the lease, she alleges that she "paid her annual fee and abided by the terms of" the lease agreement.

On March 20, 2020, plaintiff attempted to "access her safe deposit box, only to find that it had been drilled open without her notice or permission." Plaintiff alleges that upon her discovery, she "was told that the contents were missing from the box," and a bank employee "admit[ed] that they drilled" it open and "that the contents could not be located." She states that the missing contents, and thus her damages, consist solely of the $85,000 in cash.

## DISCUSSION

**I.      Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Conclusory allegations will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the document[].'" Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 123 (S.D.N.Y. 2010)

2

(quoting Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003)). "Where a document is not incorporated by reference, the court may nevertheless [sic] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). Plaintiff does not dispute that the lease agreement is integral to the complaint, and the Court will therefore consider it in ruling on defendant's motion.

## II. Breach of Contract

Under New York law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC., 156 F. App'x 349, 350-51 (2d Cir. 2005).

Plaintiff alleges that defendant breached the lease agreement by "allowing Plaintiff's safe deposit box to be opened in error and losing $85,000.00 in cash from her safe deposit box." The lease agreement provides for only a limited number of instances in which defendant may "force open" the safe deposit box, none of which, plaintiff alleges, are applicable. Defendant, for purposes of this motion, does not argue otherwise. But even if defendant's opening of the safe deposit box violated the terms of the agreement, the same agreement expressly precludes plaintiff from seeking the remedy she is seeking here.

Plaintiff contends that the exculpatory provision is not enough because "[b]anks have only been successful when the lease explicitly *prohibits* a lessee from storing cash in the SDB." (emphasis added). It is true that "New York courts have routinely upheld safe deposit box lease provisions that prohibit the storage of currency," and that the lease here does not contain such a prohibition. Helfer v. JPMorgan Chase Bank, N.A., No. 19-cv-0008, 2020 WL 6823240, at *6

(S.D.N.Y. Nov. 20, 2020); see also Radelman v. Mfrs. Hanover Trust Co., 61 Misc. 2d 669, 306 N.Y.S.2d 638 (2nd Dep't App. Term. 1969) ("[T]he lease provision prohibiting the deposit of money in the box is neither unconscionable nor offensive to public policy which imposes no limitation or restriction on the freedom of contract between a bank and its depositors . . . . Plaintiff, having executed the lease, is, in the absence of fraud or undue influence, conclusively bound by the terms therein").

However, a prohibition acting against a safe deposit box lessee is not the only way a bank can protect itself. Plaintiff's release of defendant in the lease agreement achieves the same result. "[I]t is universally understood and accepted that a bank is authorized to rent safe-deposit boxes upon such terms and conditions as may be prescribed." Uribe v. Merchants Bank of New York, 91 N.Y.2d 336, 341, 670 N.Y.S.2d 393, 396 (1998) (internal quotations omitted). "As a general rule, parties are free to enter into contracts that absolve a party from its own negligence or that limit liability to a nominal sum," Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc., 18 N.Y.3d 675, 682-83, 944 N.Y.S.2d 443, 446 (2012) (citations omitted), and "a contractual limitation on liability is enforceable." Obremski v. Image Bank, Inc., 30 A.D.3d 1141, 1141, 816 N.Y.S.2d 448, 449 (3rd Dep't 2006).

The plain terms of the lease agreement immunize defendant from liability for loss of cash. There is no reason why plaintiff should not be held to the terms to which she agreed.

**III.    Negligence and Gross Negligence**

To state a claim for negligence, "New York courts require a plaintiff to show: (1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach." King v. Crossland Sav. Bank, 111 F.3d 251, 255 (2d Cir. 1997). Where, as here, an exculpatory provision exists, it "will be enforced when its language expresses in unequivocal terms the

intention of the parties to relieve a defendant of liability for the defendant's negligence." Uribe, 91 N.Y.2d at 341, 670 N.Y.S.2d at 396.

For property other than cash, the lease agreement is clear that the

> liability of the Bank with respect to property deposited in the Safe Deposit Box is limited to the exercise of ordinary care by employees and officers of the Bank in the performance of their duties in preventing the opening of the Safe Deposit Box during the term of the lease by anyone other than the Lessee, Agent or other person authorized by law to enter the Safe Deposit Box.

The lease agreement, however, specifically disclaims liability "for alleged loss or destruction of any cash claimed to have been placed in the safe," providing that defendant will "in no event be liable." The terms of the lease agreement, then, absolve the bank of liability from losses of cash arising from its own negligence.[1]

Although the "law generally enforces contract provisions exculpating a party from its own ordinary negligence, public policy . . . forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by grossly negligent conduct." Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd., 81 N.Y.2d 821, 823, 595 N.Y.S.2d 381, 382 (1993) (internal quotations and citations omitted). "Gross negligence, when invoked to pierce a contractual limitation of liability, must smack of intentional wrongdoing . . . by evincing a reckless indifference to the rights of others." Abacus Fed. Sav. Bank, 18 N.Y.3d at 680, 944 N.Y.S.2d at 444. "Ordinary mistakes or miscalculations in performing a task will not meet this

---

[1] Plaintiff argues that "New York Courts have held that there is a valid cause of action for negligence when a bank fails to safeguard the contents of a SDB and is unable to return the contents of the SDB," citing Patel v. Maspeth Federal Sav., No. 708481/2019, 2020 WL 5260053, at *2 (N.Y. Sup. Ct. July 20, 2020). However, this presumption arises only where there is a bailee/bailor relationship. Sun Yau Ko v. Lincoln Sav. Bank, 99 A.D.2d 943, 943, 473 N.Y.S.2d 397, 398 (2nd Dep't 1984). "The relationship of a bank to the lessee of a safe deposit box is generally considered to be that of bailee to bailor with the bank responsible for loss due to its negligence *in the absence of a different agreement*." Barclift v. Am. Sav. Bank, 152 Misc. 2d 487, 488–89, 577 N.Y.S.2d 573, 574 (N.Y. City Civ. Ct. 1991). Here, the lease agreement specifically provides that defendant is not a bailor, and thus this presumption is inapplicable.

standard." Indus. Risk Insurers v. Port Auth. of New York & New Jersey, 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005).

A plaintiff may not overcome a contractual limitation on liability "simply because [she] has added a conclusory allegation of gross negligence to a cause of action." Id. Plaintiff does not allege any facts suggesting that defendant was grossly negligent; the complaint contains no allegations that "smack[] of intentional wrongdoing." "New York courts are unwilling to let cases with releases of liability go to a jury on the issue of gross negligence simply because the plaintiff has added a conclusory allegation of gross negligence to a cause of action." Id.; see also Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc., 77 A.D.3d 431, 433, 908 N.Y.S.2d 654, 656 (1st Dep't 2010) (reversing denial of motion to dismiss where plaintiff's allegations "amount[ed] to nothing more than claims of ordinary negligence"). Other than bare legal conclusions, all plaintiff alleges is that she was "told that the contents were missing from the box" and that the bank employee "offered no other information except advising that they drilled open the safe deposit box and that the contents could not be located." Nothing here suggests that anything other than simple negligence occurred.

**IV.     Deceptive Business Practices**

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully state a claim, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). A plaintiff must also allege facts demonstrating that "the disputed conduct had a broad impact on consumers at large and not just on the plaintiff." Miller v. HSBC Bank U.S.A., N.A., No. 13-cv-7500, 2015

WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015) (dismissing claim where plaintiff failed to allege damage to the consuming public at large but instead asserted "nothing more than injury to herself resulting from a private contractual dispute" with the defendant). "Where a plaintiff makes only conclusory allegations of impact on consumers at large, her claim must be dismissed." Id. See also Bell v. Deutsche Bank, No. 18-cv-01593, 2019 WL 4917901, at *7 (E.D.N.Y. Sept. 30, 2019) (dismissing claim where "plaintiffs' complaint not only fails to allege that the conduct complained of was directed at the consumer public or consumers at large," but only contains a single conclusory allegation, without "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Plaintiff fails to allege that the conduct was directed at the consumer public or consumers at large. She only alleges that defendant "falsely represented to [her] that the safe deposit boxes were safe and secure" which she claims was "materially misleading" since her "purpose in storing the cash was to ensure its safety." There are no allegations suggesting that Capital One routinely violates its safe deposit box agreements or that there is any kind of pervasive scheme it is perpetrating on the public. Therefore, plaintiff has failed to state a claim under the General Business Law.

### CONCLUSION

Defendant's motion is GRANTED, and plaintiff's complaint is dismissed.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
April 12, 2022

7